Filed 3/11/22  P. v. Polk CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SUSAN MAE POLK,<br><br>    Defendant and Appellant. | A160074<br><br>(Contra Costa County<br>Super. Ct. No. 031668-7) |

Defendant Susan Mae Polk appeals from a postjudgment order denying her petition for resentencing under Penal Code[1] section 1170.95.  The trial court found defendant ineligible for relief as a matter of law because she had not been convicted under the felony-murder rule or the natural and probable consequences doctrine.  The court also concluded the jury's finding that defendant personally used a knife indicated that defendant was the actual killer who acted with malice.

On appeal, defendant contends she is entitled to resentencing because (1) the trial court improperly considered the record of conviction; (2) the trial court employed an incorrect standard of review; and (3) the record does not indicate defendant was the actual killer, had an intent to kill, or acted with

---

[1] All statutory references are to the Penal Code.

implied malice.  Defendant further contends the trial court erroneously denied her motion to disqualify the trial court judge.  We affirm the orders.

## I.  BACKGROUND

An indictment was filed charging defendant with murder of her husband in violation of section 187.  The indictment further alleged defendant personally used a knife in the commission of the offense.  Following a jury trial, defendant was convicted of second degree murder and sentenced to 16 years to life.  This court affirmed the judgment in *People v. Polk* (2010) 190 Cal.App.4th 1183.

Defendant subsequently filed a petition for resentencing pursuant to section 1170.95.  She alleged she was convicted of second degree murder pursuant to the felony-murder rule or the natural and probable consequences doctrine.  She further asserted she could no longer be convicted of second degree murder due to changes to section 188.[2]

The district attorney opposed defendant's petition.  In relevant part, the district attorney argued defendant was ineligible for relief because she acted with express or implied malice when she stabbed the victim.  The district attorney thus argued defendant could still be convicted of second degree murder despite changes to sections 188 and 189.

The trial court summarily denied defendant's petition.  It concluded defendant had not made a prima facie showing that she was entitled to relief because she had not identified any material fact showing eligibility for resentencing relief under section 1170.95.  Specifically, the court noted defendant was not convicted of felony murder or under the theory that the

[2] The Legislature passed Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), which enacted certain changes to sections 188 and 189. Senate Bill 1437, and the related statutory revisions, are discussed in detail in part II.A.1., *post*.

murder was a natural and probable consequence of aiding and abetting in a felony. The court likewise noted that the record does not "support the conclusion that [defendant] could not be convicted of second degree murder" under the changes enacted by Senate Bill 1437. The court noted the record indicates "a reasonable juror could find that [defendant] acted with implied malice when she stabbed the victim to death. . . . The jury rejected her claim of self-defense. . . . The jury also found true that she personally used a deadly weapon. [Citation.] Therefore, it implicitly found [defendant] was the actual killer who acted with malice and changes to sections 188 and 189 are inapplicable." Defendant timely appealed.

## II. DISCUSSION

### A. Denial of Petition for Resentencing

#### 1. Statutory Background

Effective January 1, 2019, Senate Bill 1437 amended "the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); see *People v. Gentile* (2020) 10 Cal.5th 830, 842.)

Senate Bill 1437 "redefined 'malice' in section 188. Now, to be convicted of murder, a principal must act with malice aforethought; malice can no longer 'be imputed to a person based solely on his or her participation in a crime.' (§ 188, subd. (a)(3).)" (*In re R.G.* (2019) 35 Cal.App.5th 141, 144.) Senate Bill 1437 also "amended section 189, which defines the degrees of murder, by limiting the scope of first degree murder liability under a felony-

3

murder theory.  (§ 189, subd. (e).)” (*People v. Turner* (2020) 45 Cal.App.5th 428, 433.)

Senate Bill 1437 also added section 1170.95, which permits a person convicted of murder under a now-invalid felony-murder or natural and probable consequences theory to petition the superior court to vacate the murder conviction and to be resentenced on any remaining counts.  (*People v. Lewis* (2021) 11 Cal.5th 952, 959; *People v. Gentile*, *supra*, 10 Cal.5th at p. 843.)  A petitioner is eligible for relief if he or she (1) was charged with murder by means of a charging document that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; (2) was convicted of first or second degree murder; and (3) could no longer be convicted of first or second degree murder due to the changes to sections 188 and 189, effectuated by Senate Bill 1437. (§ 1170.95, subd. (a).)

In October 2021, the Governor signed into law Senate Bill No. 775 (Reg. Sess. 2021–2022) (Senate Bill 775).  Senate Bill 775 amended section 1170.95, subdivision (a) to make relief available to those convicted of “felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person’s participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter.” (Stats. 2021, ch. 551, § 2; § 1170.95, subd. (a).)  The Legislature identified four purposes in enacting Senate Bill 775:  (1) to clarify “that persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories”; (2) to codify *People v. Lewis*, *supra*, 11 Cal.5th 952 (*Lewis*), regarding the right to counsel

4

and the standard for determining a prima facie case; (3) to affirm the proper burden of proof at a resentencing hearing; and (4) to address "what evidence a court may consider at a resentencing hearing." (Stats. 2021, ch. 551, § 1, subds. (a)–(d).)

### 2. Analysis

Here, nothing in the record of conviction establishes that defendant was convicted of second degree murder pursuant to the felony-murder rule or the natural and probable consequences doctrine. To the contrary, applying the natural and probable consequences doctrine to defendant would have been absurd because "culpability under the natural and probable consequences doctrine is vicarious." (*People v. Chiu* (2014) 59 Cal.4th 155, 164, superseded by statute on other grounds as stated in *Lewis*, *supra*, 11 Cal.5th at p. 959, fn. 3.) When a defendant is the sole perpetrator, his or her liability for a crime is, by definition, not vicarious. (See *People v. Covarrubias* (2016) 1 Cal.5th 838, 901 ["The natural and probable consequences doctrine applies . . . to aiders and abettors and conspirators."]; *People v. Mendoza* (1998) 18 Cal.4th 1114, 1123 ["The actual perpetrator must have whatever mental state is required for each crime charged" but "the aider and abettor is guilty not only of the intended, or target, offense, but also of any other crime the direct perpetrator actually commits that is a natural and probable consequence of the target offense"].)[3]

---

[3] Defendant argues there are alternative "versions" of the natural and probable consequences doctrine eliminated by Senate Bill 1437. However, she fails to identify what those alternative versions are, and the only cases she cites involve vicarious liability. (See *People v. Chiu*, *supra*, 59 Cal.4th at pp. 161–162 [discussing aider and abettor liability]; *People v. Medina* (2009) 46 Cal.4th 913, 920 [addressing whether aiders and abettors were liable for murder under the natural and probable consequences doctrine].) Moreover, jury instructions on the natural and probable consequences doctrine

Comments by the Second Appellate District in *People v. Martinez* (2007) 154 Cal.App.4th 314 apply equally here:  "Unlike a case based upon the 'natural and probable consequences' theory of accomplice liability . . . , the facts of this case did not require the jury to analyze two distinct transactions—a target crime, such as robbery, and a nontarget crime, such as murder—and determine whether a murder by a confederate was the natural and probable consequence of a robbery the defendant accomplice had agreed to aid and abet." (*Id.* at p. 333.)  In this matter, defendant was charged as the sole perpetrator with one count of murder based upon a single transaction—the stabbing death of the victim.  The jury found defendant guilty of second degree murder and found true that she personally used a knife to commit the crime.  Because the jury was not instructed on felony murder or the natural and probable consequences doctrine,[4] she could not have been convicted under one of those theories.

Defendant asserts the jury was, in fact, instructed on the natural and probable consequences doctrine via the definitions of causation in CALJIC No. 3.40.  That instruction addresses the but-for test of causation, and states:  "To constitute the crime of Murder or Manslaughter, there must be in addition to the death an unlawful act which was a cause of that death. [¶] The criminal law has its own particular way of defining cause.  A cause of the death is an act that sets in motion a chain of events that produces as a *direct, natural and probable consequence* of the act the death [*sic*] and without which the death would not occur." (CALJIC No. 3.40, italics added.)  The

reference coparticipants within the elements of the doctrine.  (See CALCRIM Nos. 402, 403.)

[4] Jury instructions may also be considered as part of the record of conviction.  (*People v. Gomez* (2020) 52 Cal.App.5th 1, 16, review granted Oct. 14, 2020, S264033.)

instruction thus concerns causation, not mens rea or intent. And the record does not contain any jury instruction specifically addressing the natural and probable consequences doctrine.

Because the jury was not instructed on the felony-murder rule or the natural and probable consequences doctrine, the jury implicitly found defendant was the "actual killer," and the changes to sections 188 and 189 are inapplicable. (See *People v. Cornelius* (2020) 44 Cal.App.5th 54, 58.) In response, defendant argues the record does not conclusively establish she was the "actual killer" because she presented evidence that the victim's heart condition was the cause of death rather than the knife wounds. But this argument is inconsistent with reference to the term "actual killer" in Senate Bill 1437's legislative history, i.e., that an actual killer is someone who "personally" commits an act that results in the victim's death. (Assem. Com. on Public Safety, Rep. on Sen. Bill 1437, June 25, 2018, pp. 5–6 ["Under the provisions of this bill, an individual would not be liable for 2nd [degree] murder under a theory of felony murder unless the individual *personally committed* the act that resulted in death." (italics added)]; Sen. Rules Com., Sen. Floor Analysis of Sen. Bill No. 1437, May 29, 2018, p. 1 ["This bill revises the felony murder rule to prohibit a participant . . . to be imputed to have acted with implied malice, unless he or she *personally committed* the homicidal act." (italics added)].) Defendant's argument incorrectly assumes a person can personally commit an act that results in death only if there is no other factor that might also have contributed to the death. (See, e.g., *People v. Modiri* (2006) 39 Cal.4th 481, 493 ["The term 'personally,' which modifies 'inflicts' . . . , does not mean exclusive . . . . [¶] . . . [N]othing in the terms

7

'personally' or 'inflicts' . . . , necessarily implies that the defendant must act alone in causing the victim's injuries."].)[5]

In supplemental briefing requested by this court regarding the impact of Senate Bill 775, defendant further argued she is entitled to resentencing because she was convicted based on a " 'theory under which malice is imputed to a person based solely on that person's participation in a crime.' " She repeats her arguments regarding the natural and probable consequences doctrine to assert the jury could have imputed malice to her under CALJIC No. 3.40 based on her participation in a lesser crime, such as assault or brandishing a deadly weapon. We disagree. Senate Bill 775 added the phrase "or other theory under which malice is imputed to a person based solely on that person's participation in a crime" in connection with felony murder and the natural and probable consequences doctrine. And, as with those, the Legislature's concern was malice imputed from *another* crime. As we explain above, defendant was solely indicted for murder, and no other theory or crime was presented to the jury from which they could have imputed malice on the murder charge. Accordingly, the revisions enacted by Senate Bill 775 are inapplicable to defendant.

While defendant also argues the trial court erred by relying on the summary of evidence in this court's prior opinion and applying an incorrect standard of review, we need not reach those issues. Even if the court procedurally erred when it denied the petition, defendant is ineligible for

---

[5] Defendant's reliance on *People v. Garcia* (2020) 46 Cal.App.5th 123 is unavailing. That case addressed, in relevant part, whether a coparticipant could be liable as the actual killer for merely handing duct tape to another participant, who then taped the victim's mouth and caused asphyxiation. (*Id.* at pp. 145, 153.) The court noted the difference between proximately causing and personally inflicting harm. (*Id.* at p. 151.) Here, defendant admitted stabbing the victim.

relief as a matter of law for the reasons set forth above. Thus, she cannot demonstrate prejudice, and remand for a hearing on the petition would be futile. (See *People v. Cornelius*, *supra*, 44 Cal.App.5th at p. 58.)

## B. Motion to Disqualify

Defendant next argues the court erred in denying her motion to disqualify the trial court judge. Specifically, she references two events that she contends demonstrate bias: (1) authorizing use of the term "homicide" rather than "death" during trial; and (2) forwarding an incident report to the district attorney and public defender in which defendant allegedly accused jail personnel of being Nazis and stated she hated Nazis and Jews. She contends this bias—from over 10 years ago—continued into the court's recent ruling on defendant's section 1170.95 petition and justifies vacating the court's order denying her section 1170.95 motion.

As an initial matter, we need not reach this issue because defendant is ineligible for relief under section 1170.95, as a matter of law. Accordingly, the matter is not being remanded and there is no need to assign a different judge.

In any event, even if we were to consider defendant's constitutional claim on its merits, we would reject it. To establish such a due process violation, actual bias need not be proved; however, "based on an objective assessment of the circumstances in the particular case, there must exist ' "the probability of actual bias on the part of the judge . . . [that] is too high to be constitutionally tolerable." ' " (*People v. Freeman* (2010) 47 Cal.4th 993, 996.) Under this objective standard, "only the most 'extreme facts' would justify judicial disqualification based on the due process clause." (*Ibid*.) The due process clause does not require judicial disqualification based on the mere appearance of bias. (*Id*. at pp. 1000, 1006.) Here, none of the examples of

alleged bias constitute "extreme facts" that justify judicial disqualification based on the due process clause.

### III.  DISPOSITION

The orders summarily denying defendant's section 1170.95 petition and denying defendant's motion to disqualify are affirmed.

MARGULIES, ACTING P. J.

WE CONCUR:


BANKE, J.


EAST, J.*


A160074
*People v. Polk*

---

* Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11